JUSTIN D. HEIDEMAN (USB #8897)
THOMAS R. MCCOSH (USB #15467)
**HEIDEMAN & ASSOCIATES**
2696 North University Avenue, Suite 180
Provo, Utah 84604
Telephone: (801) 472-7742
Fax: (801) 374-1724
Email: jheideman@heidlaw.com
tmccosh@heidlaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE STATE OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| RANDY ALLMON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RON ANDERTON, an individual,<br><br>Defendant. | **VERIFIED COMPLAINT**<br><br>Case No.:<br>Judge: |

COMES NOW, Plaintiff, Randy Allmon ("Plaintiff"), by and through the law firm of Heideman & Associates, and hereby complains and alleges against Defendant, Ron Anderton ("Defendant"), as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Randy Allmon, is an individual who resides in King County, State of Washington, where he is domiciled.

2. Defendant, Ron Anderton, is an individual who resides in Juab County, State of Utah.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

4. Plaintiff, Randy Allmon, is a resident of the State of Washington and intends to remain there indefinitely, and thus is domiciled therein.

5. Defendant, Ron Anderton, is a resident of the United States, and more specifically, is a resident of the State of Utah.

6. Upon information and belief, Defendant Anderton has been in Utah for an extended period of time (no less than two years), intends to remain in the State of Utah indefinitely, and thus, Defendant Anderton treats the State of Utah as his place of domicile.

7. The amount in controversy, exclusive of interest, costs, and attorney fees, is $76,000.00.

8. This amount is greater than the amount required to establish diversity jurisdiction.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

10. Plaintiff hereby incorporate and re-alleges all previous paragraphs as through set forth fully herein.

11. In or around late 2015, Defendant began approaching Plaintiff concerning certain investment opportunities.

12. Defendant was under the impression that Plaintiff has significant disposable income based on prior conversations with Plaintiff's father-in-law.

13. Plaintiff advised Defendant that Plaintiff neither had monies to invest, or for that matter, even interested in any of Defendant's "get rich quick schemes."

14. Plaintiff previously explained to Defendant that any conversations with Plaintiff's father-in-law must be taken with the clear understanding the mental state of Plaintiff's father-in-law was rapidly declining.

15. In or around late 2016 to early 2017, Defendant began approaching Plaintiff concerning a new opportunity with a company called Aspire Lease and Factor.

16. Defendant explained to Plaintiff that he (Defendant) was working with an individual with whom Defendant worked with at Fidelity Investments during the 1990s.

17. Defendant further explained that any funds raised would be used to invest in a hemp farm, located in California, to manufacture and produce CBD oil.

18. Plaintiff explicitly affirmed to Defendant that this was not a venture that Plaintiff was interested in.

19. Furthermore, after researching the venture posed by Defendant, Plaintiff was convinced that Defendant's new business was not authentic.

20. Defendant continued to badger Plaintiff to invest in this hemp farm.

21. Specifically, Defendant asserted that any investment by Plaintiff, Plaintiff would receive a 100 percent guarantee based on assets.

22. Plaintiff again advised Defendant that he (Plaintiff) was not interested.

23. Determined and unwavering, Defendant continued to call and e-mail Plaintiff, stating that this investment opportunity could not fail because of the guarantee.

24. Plaintiff further researched this business venture.

25. Plaintiff again came to the same conclusion, that this opportunity did not appear to be legitimate.

26. Plaintiff advised Defendant that he (Plaintiff) was still not interested.

27. Nevertheless, Defendant continued to badger Plaintiff for money.

28. In early May 2017, continuing Defendant's pursuit of Plaintiff's monies, Defendant offered Plaintiff a term on the loan of six months, including paying additional interest on the "loan."

29. On May 3, 2017, Defendant emailed Plaintiff in further hopes that he could manipulate Plaintiff in to providing monies to Defendant. [*See* May 3, 2017, email attached hereto as Exhibit 1]

30. Defendant attempted to convince Plaintiff that Plaintiff's "investment" would be repaid within one year, plus interest. [*Id.*]

31. Defendant then offered to secure the loan with collateral of $100,000 equity in a home Defendant owned in Idaho. [*Id.*]

32. Defendant further enticed Plaintiff writing that Defendant would provide "a loan agreement or whatever documents you require[,]" and represented that $50,000 liquid funds would be sitting in Defendant's business bank account. [*Id.*]

33. On May 10, 2017, Defendant emailed Plaintiff stating that Defendant was ready to close on an opportunity worth several hundred thousand dollars, "if we can fund it in the next 10 days. This is certain." [*See* May 10, 2017, email attached hereto as Exhibit 2]

34. On May 16, 2017, Defendant emailed Plaintiff, which included an Idaho Promissory Note (the "Idaho Note") for the amount of $75,000. [*See* May 16, 2017, email attached hereto as Exhibit 3].

35. Under the terms of the Idaho Note, Defendant promised to pay Plaintiff the "full balance," plus accrued interest on November 18, 2017. [*Id.* at ¶ 2].

36. Defendant agreed to pay Plaintiff a $1,000 late fee and twenty percent interest on any unpaid principle in the event of default. [*Id.* at ¶¶ 3 and 6].

37. Defendant also agreed to an attorney's fees provision, which states as follows:

> Borrower shall pay all costs incurred by Lender in collecting sums due under this Note after a default, including reasonable attorneys' fees. If Lender and Borrower sues to enforce this Note or proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding (including those incurred in any bankruptcy proceeding or appeal) from the non-prevailing party.

[*Id.* at ¶ 9].

38. Defendant again promised that the Idaho Note would be secured by Defendant's property in Idaho. [*Id.* at ¶ 17].

39. Specifically, Defendant secured the Idaho Note with property located at 733 Barn Wood Dr., Ammon, Idaho 83406. [*Id.*].

40. To further entice Plaintiff into loaning monies to Defendant, Defendant emailed Plaintiff the following day, May 17, 2017, and provided Plaintiff a "Mortgage – Short Covenant" for $25,000 to be recorded against Defendant's Idaho property. [*See* May 17, 2017 email attached hereto as Exhibit 4].

41. Defendant continued with the consistent badgering for monies from Plaintiff.

42. On or about May 18, 2017, Plaintiff agreed to make a loan of $75,000 to Defendant.

43. Plaintiff advised Defendant that the loan would only be made to Defendant, not to Defendant's company.

44. Additionally, Plaintiff advised Defendant that Defendant would be solely responsible for repaying the loan.

45. Defendant agreed to personally guarantee the loan based upon the Note and Mortgage-Short Covenant filed against Defendant's property in Idaho.

46. On May 19, 2017, Plaintiff and Defendant produced a written document memorializing the terms of their agreement. [*See* Exhibit 3, Idaho Promissory Note (Secured)].

47. On May 19, 2017, Plaintiff wired Defendant $75,000 (the "Loan").

48. Between May 19, 2017 and November 18, 2017, Defendant rarely communicated with Plaintiff.

49. On November 18, 2017, the Loan became due and Defendant failed to make any payment.

50. Shortly after, Plaintiff called Defendant.

51. Defendant explained to Plaintiff that business was progressing.

52. Defendant further explained that he was searching for additional funds to put the operation in to high gear.

53. Defendant assured Plaintiff that Plaintiff's Loan would be doubled very soon and requested additional time to repay.

54. On or about May 2018, Defendant sold the property in Idaho.

55. Defendant again failed to make any payments to Plaintiff on the Loan.

56. In mid-2018, while visiting Plaintiff, Defendant advised Plaintiff that all the funds collected for this "investment" was gone.

57. Defendant stated that Defendant lost Plaintiff's, and several other individuals' money, totaling approximately $12 million dollars.

58. Plaintiff demanded repayment and an explanation.

59. Defendant provided excuses such as – claiming that the mafia took the money, or that the pot farm lost its license in California.

60. Sometime in 2019, Defendant inherited a trucking company located in Santaquin, Utah.

61. Defendant then advised Plaintiff that Defendant could start making payments on the Loan beginning January 1, 2020.

62. Defendant again, failed to make any efforts towards repaying the Loan.

63. As of August 19, 2019, Defendant has not communicated or attempted to make payments on the $75,000 Loan.

**FIRST CAUSE OF ACTION**
*(Breach of Contract)*

64. Plaintiff hereby incorporate and re-alleges all previous paragraphs as through set forth fully herein.

65. In Utah, "The elements of a prima facie case of breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages. *See Bair v. Axiom Design, LLC*, 2001 UT 20.

66. The essential elements of a contract include an offer and acceptance, competent parties, and consideration.

67. The written agreement attached in Exhibit 3 shows evidence that an offer was made to Plaintiff containing a mutual exchange of promises.

68. On the one hand, Plaintiff promised to pay $75,000 to Defendant.

69. On the other hand, Defendant promised to repay Plaintiff the full balance plus interest of 20 percent per annum, within six months.

70. Defendant also promised that the $75,000 debt would be secured by real property.

71. Plaintiff accepted the offer and performed his portion of the agreement by paying $75,000 to Defendant on the date indicated in the written document.

72. Thereafter, Defendant failed to perform his obligations under the contract.

73. Specifically, Defendant never made any payments to Plaintiff on or before November 18, 2017.

74. In fact, Defendant has not made any payments to Plaintiff at all.

75. The contract imposes a $1,000.00 late fee, plus interest, in the event that payment is not timely made.

76. Defendant also sold the security tendered for the transaction before recording the transaction in the appropriate county recorder's office, leaving Plaintiff with no security for the Idaho Note.

77. Defendant has therefore breached his contract with Plaintiff.

78. As a result of Defendant's breach of the Parties' contract, Plaintiff is entitled to a judgment for expectation damages under the contract, including full repayment of the loan, plus late fees, totaling $76,000.00, plus prejudgment interest and attorney fees.

**SECOND CAUSE OF ACTION**
*(Breach of Implied Covenant of Good Faith and Fair Dealing)*

79. Plaintiff hereby incorporate and re-alleges all previous paragraphs as through set forth fully herein.

80. When the Parties entered into an agreement, each Party implicitly owes the other a covenant of good faith and fair dealing.

81. This obligation of good faith and fair dealing requires each Party to constructively promise to abstain from any actions that will intentionally injure or destroy the other Party's right to receive the contracted outcome.

82. The Parties compliance with this covenant or duty depends upon the agreed common purpose and justified expectations of the parties.

83. Defendant violated its implied covenant of good faith and fair dealing by refusing to comply with its contractual duties by failing to repay the Loan by November 18, 2017, or to make any payments on the note since that date.

84. Defendant intentionally and purposely destroyed and injured Plaintiff's right to receive the fruits of the above contract – the Loan.

85. Defendant's breach of his implied covenant of good faith and fair dealing has caused Plaintiff to incur special and consequential damages, general damages, and attorney's fees and costs.

**THIRD CAUSE OF ACTION**
*(Unjust Enrichment)*

86. Plaintiff hereby incorporate and re-alleges all previous paragraphs as through set forth fully herein.

87. Unjust enrichment occurs when a party receives and trains a benefit from a conferee under such circumstances as would make it unjust for the recipient to retain the benefit without payment of its fair value to Plaintiff.

88. Defendant received a benefit from Plaintiff when Defendant knowingly accepted $75,000.

89. Defendant has retained and failed to make any repayment efforts upon such funds.

90. Plaintiff has lost the use and benefit of such funds as a result of Defendant's actions.

91. Defendant has been unjustly enriched at the expense of Plaintiff, and retention of any amounts paid would be inequitable.

92. Defendant's unjust enrichment has caused Plaintiff to incur special damages, other incidental and consequential damages, and attorney's fees and costs.

## <u>FOURTH CAUSE OF ACTION</u>

*(Promissory Estoppel)*

93. Plaintiff hereby incorporate and re-alleges all previous paragraphs as through set forth fully herein.

94. Defendant made certain promises to Plaintiff, including:

i. Repaying the Loan in full plus interest on or before November 18, 2017;

ii. Securing the Loan with a promissory note;

iii. Securing the Loan with a lien against Defendant's Idaho property; and

iv. Repaying the Loan upon sale of Defendant's Idaho property.

95. Plaintiff reasonably acted and relied upon the above promises made by Defendant, which Defendant failed to fulfill.

96. Plaintiff relied on these promises to his detriment, causing Plaintiff to incur special damages, incidental and consequential damages, and attorney's fees and costs.

## <u>FIFTH CAUSE OF ACTION</u>

(*Implied in Fact Contract, Quasi Contract, and/or Quantum Meruit*)

97. Plaintiff hereby incorporate and re-alleges all previous paragraphs as through set forth fully herein.

98. Defendant and Plaintiff mutually assented to the terms of the contract for the May 19, 2017 Loan.

99. Plaintiff paid Defendant $75,000 with the security of a promissory note and lien against Defendant's Idaho property.

100. Defendant provided no indication that Plaintiff would not be repaid the $75,000 plus interest.

101. Furthermore, Plaintiff justifiably and reasonably relied upon Defendant's assurance, the Idaho Note, and property lien that Plaintiff's repayment on the Loan was in jeopardy.

102. Defendant was fully aware of the terms and mutual assent for the Loan from which an agreement was made between Defendant and Plaintiff.

103. As a proximate and foreseeable result of intentional misconduct by Defendant, and such others as discovery will reveal, resulting in injuries and harm that continues to this day.

104. Plaintiff is entitled to a judgment against Defendant in an amount to be proven at trial, but no less than $125,747.40.

## COMPUTATION OF DAMAGES

105. Plaintiff hereby incorporate and re-alleges all previous paragraphs as through set forth fully herein.

106. Plaintiff is entitled to an award and judgment for damages according to the following computation:

i. Plaintiff is entitled to the return of the principal sum of $75,000.00.

ii. Plaintiff is entitled to assess a late fee of $1,000.00.

iii. Plaintiff is entitled to interest at a rate of twenty (20) percent per annum on the principal balance, calculated from May 19, 2017.

iv. Plaintiff is entitled to pre-judgment interest on the $1,000.00 late fee as of November 19, 2017.

v. Attorney Fees and costs as allowed by contract.

107. On October 28, 2020, the total sum of the principal, late fee, and interest was calculated to be no less than $125,747.40. Plaintiff reserves the right to seek any and all pre and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pray the Court for the following relief:

1. For special and general damages to be determined by the trier of fact, but no less than $76,000, exclusive of interest, costs, and attorney fees;
2. For pre and post judgement interest on all general, special, and expectation damages pursuant to Utah Law and in accordance with the parties' agreement, in any event no less than an additional $49,747.40;
3. Attorney fees and costs to the extent allowed by law and by the parties' agreement;
4. Punitive damages if allowed by statute or common law; and
5. For any other relief that this Court deems just or equitable.

DATED and SIGNED this 28th day of October 2020.

**HEIDEMAN & ASSOCIATES**
/s/ Justin D. Heideman
JUSTIN D. HEIDEMAN
*Attorneys for Plaintiff*

**VERIFICATION**

STATE OF WASHINGTON )
ss.
KING COUNTY )

On this 27 day of October 2020, personally appeared before me, RANDY ALLMON, Plaintiff in the above-captioned Verified Complaint. RANDY ALLMON, being first duly sworn upon oath, deposes and states that he has read the foregoing Verified Complaint, knows and understands the contents thereof, and that the same is true to the best of his own knowledge, and affirms as their sworn testimony to the best of his knowledge and based on a reasonable inquiry into facts presently known, to which they verifies as their affidavit and affirms under penalty of criminal perjury.

DATED this 27 day of October 2020.

RANDY ALLMON, Plaintiff

SUBSCRIBED and SWORN to before me this 27th day of October 2020.

NOTARY PUBLIC in and for
the State of Washington
My Commission expires: 11-19-23

CARRIE WHITE
STATE OF WASHINGTON
NOTARY PUBLIC
COMMISSION EXPIRES 11-19-23
210135 NOTARY